## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 11 2019, 10:09 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kay A. Beehler
Terre Haute, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Courtney L. Abshire
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jon T. Marshall,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

December 11, 2019

Court of Appeals Case No.
19A-CR-1683

Appeal from the Vigo Superior Court

The Honorable John T. Roach, Judge

Trial Court Cause No.
84D01-1807-F1-2366

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Jon Marshall (Marshall), appeals the sentence imposed by the trial court following his guilty plea to robbery resulting in serious bodily injury, a Level 2 felony, Ind. Code § 35-42-5-1(a)(1).

We affirm.

# ISSUE

Marshall presents one issue on appeal, which we restate as: Whether the trial court abused its discretion when it identified the mitigating and aggravating circumstances for sentencing.

# FACTS AND PROCEDURAL HISTORY

Curtis Pike (Pike) is an oxygen-dependent, disabled Vietnam veteran who was seventy-three years old in 2018. At around 1:00 p.m. on July 8, 2018, Pike answered a knock at the door of his home in Terre Haute, Indiana, and found his stepson, Marshall, there. Marshall gained access to Pike's home by untruthfully telling Pike that Pike's daughter had been in a car accident. Once he had gained entry, Marshall demanded money from Pike. Marshall's accomplice, Derek Worthington (Worthington), also entered Pike's home. Marshall and Worthington pointed semi-automatic handguns at Pike and repeatedly demanded money.

Pike told Marshall and Worthington that he did not have a large amount of cash in the home, and they threatened to kill Pike if he was lying. They took

the two debit cards and $200 in cash Pike had on his person. They then cut the line to Pike's oxygen tank, making it difficult for Pike to breathe. Marshall and Worthington searched Pike's home for more valuables and found an additional $1,000 in cash. Upon making this discovery, Worthington told Pike that "you shouldn't have lied to us" and struck Pike twice on the back of his head, knocking him to the ground and causing him to bleed. (Appellant's App. Vol. II, p. 6).

Marshall and Worthington picked Pike up from the ground, sat him in a kitchen chair, and bound his arms, chest, wrists, and ankles to the chair with tape. Pike was unable to breath and pleaded for oxygen. Marshall and Worthington provided Pike with some breaths of oxygen from an auxiliary tank so that he could speak and tell them where more valuables were located in the home. Attempting to negotiate for his life with his assailants, Pike directed them to a safe in his bedroom that contained gold jewelry. Marshall and Worthington told Pike that they would kill him if he did not provide them with the PIN number to his debit card and again threatened to kill him if the number he subsequently provided was not correct. Marshall and Worthington took some jewelry from the safe, threatened to return and kill Pike if there was no money in his banking account, and left with Pike's auxiliary oxygen tank.

Pike spent several hours trying to free himself from the tape binding him to the kitchen chair. After freeing himself, Pike fled to a neighbor's home. Law enforcement was alerted around 5:00 p.m., and Pike was transported to the hospital for treatment. Pike identified Marshall as one of his assailants.

[8] On July 9, 2018, the State filed an Information, charging Marshall with attempted murder, a Level 1 felony; robbery resulting in serious bodily injury, a Level 2 felony; criminal confinement, a Level 3 felony;[1] battery resulting in serious bodily injury, a Level 5 felony; and pointing a firearm, a Level 6 felony. Marshall was apprehended and arrested on July 17, 2018, and he identified Worthington as his accomplice. On June 14, 2019, the trial court held a guilty plea and sentencing hearing. Marshall pleaded guilty to the Level 2 felony robbery resulting in serious bodily injury charge pursuant to a plea agreement with the State which capped his executed sentence at thirty years. The State also agreed to dismiss the remaining charges pending against Marshall.

[9] Pre-sentencing investigation revealed that Marshall had been charged with Class D felony theft in 1998 and had judgment entered against him in that case for Class A misdemeanor theft. In 2008, Marshall had been arrested for four drug-related offenses in Illinois, including charges of drug conspiracy, possession of methamphetamine, possession of marijuana, and possession of precursors. Marshall pleaded guilty to the felony possession of methamphetamine charge. Judgment was not entered against him in that case, and he was placed on probation. Marshall had also been convicted of Class A misdemeanor reckless driving in 2013. Marshall had a history of convictions for traffic violations as follows: (1997) disregarding a stop sign; (1999) speeding

---

[1] On October 20, 2015, the State filed a notice of enhancement of this offense to a Level 2 felony for use of a firearm during its commission.

and failure to provide proof of insurance; (2000) failure to provide proof of insurance; (2004) failure to provide proof of insurance (three times) and driving while suspended (three times); and (2013) failure to provide proof of insurance. Marshall's driver's license had been suspended on at least fourteen occasions since 1997. Marshall reported that he had abused methamphetamine, marijuana, prescription medication, and cocaine. In letters submitted to the trial court, Marshall admitted that he was under the influence of methamphetamine at the time he committed the robbery.

[10] On June 21, 2019, the trial court issued its Order sentencing Marshall. The trial court found as aggravating circumstances that the harm suffered by Pike was significant and greater than that necessary to prove the offense; Marshall had a criminal history "though significantly different than his co-defendant;" Pike was over the age of sixty-five, being seventy-three years old; and Pike was physically infirm. The trial court found the nature of the offense to be an additional aggravating circumstance, in that Marshall's offense was a "planned, heinous attack on an elderly, infirm, veteran which left him bloodied, without oxygen and terrified for hours as he tried to free himself" and because Marshall had played upon Pike's trust in order to gain access to Pike's home. (Appellant's App. Vol. II, p. 40).

[11] The trial court found that Marshall's history of substance abuse was mitigating but noted that previous court-ordered attempts to address the issue had failed. The trial court acknowledged Marshall's expressions of remorse and the fact that he took responsibility for his actions from the time of his arrest,

cooperating with law enforcement even though it exposed him to great legal jeopardy. However, the trial court found that Marshall had received a significant benefit as a result of his cooperation with law enforcement in the form of a plea agreement pursuant to which the remaining charges were dismissed. The trial court rejected Marshall's proffered mitigating circumstance that he had a minimal criminal history, finding that Marshall had a history of criminal and delinquent behavior and that he had not lived a law-abiding life for a substantial period before the instant offense. The trial court found that an aggravated sentence was merited and sentenced Marshall to twenty-one years, with the possibility of a sentence modification after he had executed fifteen years.

[12] Marshall now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

[13] Marshall's sole challenge to his sentence is that the trial court "abused its discretion in imposing an aggravated sentence based upon factors not supported by the record." (Appellant's Br. p. 6). So long as a sentence imposed by a trial court is within the statutory range for the offense, it is subject to review only for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007). An abuse of the trial court's sentencing discretion occurs if its decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Id*. A trial court abuses its discretion when it fails to enter a sentencing statement at all, its stated reasons for

imposing sentence are not supported by the record, its sentencing statement omits reasons that are clearly supported by the record and advanced for consideration, or its reasons for imposing sentence are improper as a matter of law. *Id.* at 490-91.

[14] Here, Marshall pleaded guilty to Level 2 felony robbery resulting in serious bodily injury. A Level 2 felony carries a sentencing range between ten and thirty years, with an advisory sentence of seventeen and one-half years. *See* I.C. § 35-50-2-4.5. The trial court imposed a slightly enhanced, twenty-one- year sentence, and, therefore, the trial court's sentence was within the parameters of Marshall's plea agreement and the sentencing range for the offense.

## I. *Mitigating Circumstances*

[15] Marshall's first argument pertains to the mitigating circumstance of his acceptance of responsibility. Marshall contends that the "record supports the conclusion that [] Marshall took absolute responsibility for his offense and should have been considered an appropriate mitigating factor." (Appellant's Br. p. 7). The trial court agreed and identified Marshall's remorse, acceptance of responsibility, and cooperation with law enforcement as mitigating factors. The trial court also found that Marshall had obtained a great benefit in the dismissal of the remaining four felony charges in exchange for his plea. Thus, the trial court apparently concluded that the significance of Marshall's acceptance of responsibility was lessened by the benefit he had obtained from it. This was within the trial court's sentencing discretion. *See Anglemyer*, 875 N.E.2d at 221 ("[A] guilty plea may not be significantly mitigating when . . . the

defendant receives a substantial benefit in return for the plea."). The gravamen of Marshall's argument on appeal is that the trial court should have accorded his acceptance of responsibility more mitigating weight. This argument is not persuasive, as we no longer review the weight accorded to mitigating and aggravating circumstances by a trial court. *Anglemyer*, 868 N.E.2d at 491.

Marshall also argues that the trial court abused its discretion when it rejected his criminal record as a mitigating circumstance, finding it instead to be an aggravating one. As more fully explained below, we conclude that the trial court's finding that Marshall's criminal record was an aggravating circumstance was proper. Therefore, we reject Marshall's contention that his criminal record was actually a mitigating circumstance.

## II. *Aggravating Circumstances*

Marshall contends that the trial court abused its discretion when it identified his criminal record as an aggravating circumstance. More specifically, Marshall argues that the trial court's finding that he "clearly has a history of criminal and delinquent behavior" was unsupported by the record and that it was "undisputed that [Marshall] has no juvenile criminal history." (Appellant's Br. p. 8). While we agree that the record would not support a finding that Marshall had a juvenile criminal history, the trial court did not find that Marshall had a juvenile criminal history. Rather, it found that Marshall had a history of "criminal and delinquent behavior." (Appellant's App. Vol. II, p. 41). This finding was supported by evidence that Marshall had misdemeanor convictions in 2008 for theft and in 2013 for reckless driving. Marshall had also been

arrested in 2010 on four felony drug charges in Illinois and pleaded guilty to possession of methamphetamine. In addition, Marshall had numerous convictions for traffic violations, and his driver's license had been suspended on many occasions starting in 1997. In light of the evidence of Marshall's history of convictions, arrests, and his driving record, we cannot say that the trial court's finding is unsupported by the record.

[18] Inasmuch as Marshall argues that his criminal record was not significant for sentencing, we observe that the significance of a defendant's criminal history varies based on the gravity, nature, and number of prior offenses as they relate to the current offense. *Caraway v. State*, 959 N.E.2d 847, 851 (Ind. Ct. App. 2011), *trans. denied*. Here, Marshall's theft offense was remote in time, but, like the instant robbery, it was also a property offense, which provides it with some relevance for sentencing. In addition, Marshall admitted that he was under the influence of methamphetamine at the time of the robbery, which rendered his earlier methamphetamine conviction at least somewhat significant for sentencing. *See Caraway*, 959 N.E.2d at 851 (concluding that the trial court did not abuse its discretion in finding Caraway's history of alcohol-related offenses to be significant for sentencing for murder where he was drunk at the time of the offense). Marshall's pattern of traffic violations and license suspensions did not reflect well on his character, which also made his driving record relevant for sentencing. Although the trial court found that Marshall's criminal history was an aggravating circumstance, it also found that Marshall's criminal history was "significantly different than [Worthington's]." (Appellant's App. Vol. II, p. 40).

Thus, although the trial court found this factor to be an aggravating circumstance, it does not appear that the trial court accorded Marshall's criminal history a great deal of significance for sentencing.

[19] In a related argument, Marshall challenges the trial court's finding that there was no evidence that he had led a "'law abiding life for a substantial period'" before the instant offense. (Appellant's App. Vol. II, p. 41). Marshall argues that this finding was not supported by the record because the evidence of his driving record, admitted at the sentencing hearing as the State's Exhibit 1, was inadmissible hearsay and contained duplicate dates. However, Marshall did not object to the admission of Exhibit 1 at the hearing and raises this argument for the first time on appeal; therefore, his argument is waived. *See Washington v. State*, 808 N.E.2d 617, 625 (Ind. 2004) (holding that, as a general rule, a party waives an argument or issue presented for the first time on appeal).

[20] We observe that even if we were to conclude that the trial court abused its discretion when it identified Marshall's criminal record as an aggravating circumstance, we would not reverse the trial court's sentencing decision. When a trial court abuses its discretion by considering an improper aggravating circumstance, we remand for sentencing only "if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record." *Anglemyer*, 868 N.E.2d at 491. The trial court found that the harm to Pike, which was greater than that necessary to prove the offense, Pike's age and physical infirmity, and the heinous nature of the offense were additional aggravating circumstances.

Marshall does not challenge the validity of these additional aggravating circumstances on appeal, any one of which would have justified the imposition of an aggravated sentence. *See Guzman v. State*, 985 N.E.2d 1125, 1133 (Ind. Ct. App. 2013) ("It is well-settled that a single aggravating factor is sufficient to warrant an enhanced sentence."). In light of these additional unchallenged aggravating circumstances, we are confident that the trial court would have imposed the same sentence irrespective of its consideration of Marshall's criminal record.

## CONCLUSION

[21] Based on the foregoing, we conclude that the trial court properly identified the mitigating and aggravating circumstances and, therefore, the trial court did not abuse its discretion when it imposed an enhanced sentence.

[22] Affirmed.

[23] Baker, J. and Brown, J. concur